UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

TERRY WILLIS STARNES, )
)
*Plaintiff,* )
v. ) No. 2:08-cv-244
) *Judge Jordan*
GREEN CO. SHERIFF'S DEP'T and )
STEVE BURNS, )
)
*Defendants.* )

### **MEMORANDUM and ORDER**

Acting *pro se*, former prisoner Terry Willis Starnes brings this civil rights action pursuant to 42 U.S.C. § 1983, [Doc. 3], alleging that he was subjected to unconstitutional conditions during his seventeen-day confinement in the Greene County Detention Center [GCDC]. Plaintiff's application to proceed without prepayment of fees, [Doc. 1], is **GRANTED**.

### *I. Facts*

In the "Statement of Claims" section of the complaint, plaintiff writes:

I was incarcerated @ the Greene Co. Detention Center over child support from Aug. 24, 07 - Sept. 10, 07 During this time many of my rights under law were violated. On the day of my arrival, I was put in a cell with nine other inmates in a four man cell with only a blanket for bedding. I remained on the floor until the day I was released, Sept. 10, 07. Several days without hot water for showering jail issue "stripes" given to me Aug

24, 07 were never exchanged for the duration of my incarceration. Grievances sent to Sherriff (sic) over these and other matters were never returned.

On a separate piece of paper attached to the complaint, plaintiff continues his recitation regarding the jail conditions.

> Ants were increasing in numbers on floor, inmates and food. Exterminator was finally brought in and sprayed for insects while we remained in the cell this made me feel sick for two days others complained as well, grievances were sent but again none were returned. When I arrived at the jail and saw the conditions, I decided to keep a daily diary.

Under the heading, "Actual Account of Events," in the so-called daily diary, plaintiff offers more allegations involving the questioned conditions.

1. Aug. 24 & 25: Inmates were being urinated on. Guards were told about this but refused to allow the door to be left open. Threatened to file suite (sic). Laughed at.

2. Aug. 26: Cell door left open due to unsanitary reasons [stuffing pulled from mats] I am a state prisoner, with no outside recreation, only three (3) hours recreation a week inside.

3. Aug. 27 & 28: Plaintiff awakened to find ants biting him. Ants were on sandwiches. Guards laughed when they were notified.

4. Aug. 30: Lock down began (John Keyes).

5. Aug. 31: Still locked down the next day. Ryan [illegible] and Mormon. Aaron told about no hot water. Come in cell around 3:30-4:30 a.m., checking window, stepped over 4 men coming in and going out, stopped to answer inmates who asked for blankets ("see what I can do"), took bottle from sink which was necessary for cold water dispense, soon after hot water. Still no change of jail issued stripes makes 9 days also no hot water all day.

6. [Sept.?] 3rd: As of 11:00 a.m. still no hot water. inmates complain to guards about stinch (sic). Locked down for reasons unknown. Still no hot water, stinch (sic) getting worse.

7. 4th: Gone without hot water until this morning at approx 9:45 this makes over two full days without hot or even warm water. Hot water ran out again at approx. 1:00. got our hour out at 1:35 still no hot water. took cold shower anyway, did not get an hour out only 40 mins. still no clean "jail issues" 11th day

8. 5th: Hot water issue starting to come to blows between inmates. Hot water will work for approx. 30-45 mins. at a time causing inmates to compete for shower time. hot water will be off 4 - 8 hours then on again for short spurts. Still no "jail issues" 12th day. T.V. left on all night as loud as it would go to "teach us a lesson" for reminding them to turn it off.

9. 6th: 3:00 a.m. T.V. still blaring, no sleep, guards not responding now when asked nicely to turn it off. punishment has become cruel & inhumane. approx. 11:00 a.m., Lt. Tweed came in cell along with 4 more guards, search cell A-4 only. Took pillows etc. Paul Cook voice opinion about such issues as neglecting to provide inmates with clean "jail issue" uniforms 2. sleeping on floor 3. lack of hot water 4. ants on self & food 5. molded bread. Lt. Tweed's response to questions was "I agree, when you go to Court, raise Hell, I'm with you all the way they should supply clean 'Blues' on time and keep hot water supplied, I'm with you all the way and you can tell 'them' I said so." [Eye and ear witnessess (sic) to fact:] Exterminator Matt wet with insecticide.

10. Sept. 7th: No hot water, no clean "Blues" 14 days and counting.[1]

---

[1] Preceding this entry is what appears to be the signatures and dates of birth of seven inmates, including plaintiff. Affixed at the bottom of the daily dairy are twenty-two signatures, including plaintiff's. An additional ten signatures follow this notation: "The following signatures have seen a daily battle concerning loss of hot water & unsanitary condition since 9-03-07."

3

11. There has been no hot water in A-pod since around 2:00 p.m. Sun. Sept. 2, 07. It is now late evening Mon. Sept. 3, and no one has had even warm water to shower in. Many men have complained to both shifts but apparently they're not concerned. The following are signatures of inmates whose rights have been violated without explanation.

Plaintiff contends that the above described conditions and incidents violate the Eighth Amendment's prohibition of cruel and unusual punishment. For these alleged encroachments on his constitutional rights, plaintiff seeks compensatory damages in the amount of $375,000. Plaintiff also asks the Court to ensure "that Sheriff Burns corrects conditions."

## II. *Screening Under 28 U.S.C. §§ 1915A and 1915(e)*

The Court must now review the complaint pursuant to 28 U.S.C. § 1915A and § 1915(e). Title 28 U.S.C. §§ 1915(e)(2), 1915A, and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss complaints filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous, malicious, fail to state a claim upon which relief can be granted, or seek monetary damages from defendants who are immune from such relief. *See McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). In performing this task, however, the Court must bear in mind that *pro se* pleadings filed in civil rights cases are construed indulgently and held to a less stringent standard than formal pleadings drafted by lawyers. *McNeil v. United States,* 508 U.S. 106, 113

(1993); *Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir. 1996).

A. **Requested Remedies**

1. *Injunctive relief:* Unfortunately for plaintiff, the Court cannot grant his request to require the Sheriff to correct the claimed unconstitutional conditions at the GCDC. A prisoner's request for injunctive or declaratory relief against jail officials is rendered moot by his release from the correctional institution of which he complains. *See, e.g., Kensu v. Haigh,* 87 F.3d 172, 175 (6th Cir. 1996). This is what has happened here. Plaintiff filed this action following his release from the GCDC. Therefore, because plaintiff could not benefit from any improvement in the living conditions at that facility, his claims for injunctive relief are **MOOT** were **MOOT** from the very beginning. *See Wirsching v. Colorado,* 360 F.3d 1191, 1196 (10th Cir. 2004) (After an inmate's release from prison, "the entry of a declaratory judgment [and injunctive relief] in [plaintiff's] favor would amount to nothing more than a declaration that he was wronged.").

2. *Monetary relief:* Plaintiff also asks the Court to grant him monetary damages, but he does not allege that he sustained any physical injury as a result of his exposure to the purported conditions, aside from his complaint that he felt sick for two days after the exterminator sprayed the facility rid it of ants. A prisoner may not bring a claim for emotional or mental damages absent a showing of prior physical injury. *See* 42 U.S.C. § 1997e(e). This provision applies to Eighth Amendment claims, such as plaintiff has

5

asserted. *See Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir.1997). Here, the sick feeling plaintiff experienced was, at the most, a de minimis injury, which does not permit him to pursue his claims for damages under § 1997e(e). *Flanory v. Bonn*, __ F.3d __, __, 2010 WL 1791327, *4 (6th Cir. May 6, 2010) ("We have indicated that even though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than de minimis for an Eighth Amendment claim to go forward.").

B. **Standing**

Many of the claims raised by plaintiff relate to the rights of third persons, i.e., other inmates. Plaintiff, however, cannot base his claim to relief on the legal rights or interests of a third party. *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Therefore, plaintiff lacks standing to raise claims on behalf of the other prisoners. *See Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).

C. **Non-Suable Defendant**

The first identified defendant, the Greene County Sheriff's Department, is not a proper party to this lawsuit. This is so because the Sheriff's Department has no legal or corporate existence apart from Greene County and, hence, is not a "person" subject to liability under 42 U.S.C. § 1983. *Brock v. Warren County*, Tenn., 713 F.Supp 238 (E.D. Tenn. 1989). *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n. 55 (1978) (For purposes of a § 1983 action, a "person" includes individuals and "bodies politic and

corporate."); *Cage v. Kent County Correctional Facility*, 1997 WL 225647, *1 (6th Cir. May 1, 1997) (jail is not a suable entity).

D. **Living Conditions**

Plaintiff contends that he was housed in a four-person cell with eight other inmates and had to sleep on the floor with only a blanket for bedding,[2] deprived of hot water on many occasions, denied clean jail garb, and experienced a sleep disruption one night because officers had turned up the volume on the television set as high as it would go.

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney* 509 U.S. 25, 31 (1993). Prison officials must provide humane conditions of confinement, including adequate shelter, *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994), with reasonably adequate sanitation and utilities, such as hot water. *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980). While comfortable prisons are not mandated and though restrictive or even harsh conditions do not violate the Eighth Amendment, a prisoner may not be subjected to a condition which strips him of the bare necessities of life. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

---

[2] The Court assumes that plaintiff was supplied a sleeping mat, since he has pointed to "stuffing pulled mats" as an unsanitary condition in his cell. *See* Entry of Aug 26, 2007, Daily Diary.

7

To prevail on a conditions-of-confinement claim, a prisoner must show that he suffered an objective, sufficiently serious deprivation (i.e., one that results in the denial of the minimal civilized measure of life's necessities) and that a prison official was deliberately indifferent to a substantial risk of serious harm. *Farmer*, 511 U.S. at 834 and 842; *Spencer v. Bourchard*, 449 F.3d 721, 727-28 (6th Cir. 2006) (applying *Farmer* to examine pretrial detainee's claim of inadequate shelter due to cold, wet conditions). A sufficiently serious deprivation might be found where an inmate is subjected to a low cell temperature at night, not provided blankets, and deprived of his basic need for warmth. *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). To establish deliberate indifference, plaintiff must show that a defendant was aware of facts from which he could infer that such a risk existed and that he actually drew that inference. *Farmer*, 511 U.S. at 837.

Also relevant in determining the constitutionality of a specific condition is the length of time an inmate is subjected to it. *Bell v. Wolfish*, 441 U.S. 520, 543 (1979) ("Our conclusion [that double-bunking is constitutionally permissible] is further buttressed by the detainees' length of stay . . . . Nearly all of the detainees are released within sixty days."); *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) ("A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months."); *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982)

8

("allegations of two days of discomfort are not sufficient to state a claim of constitutional dimension"). Put simply, "temporary inconveniences and discomforts" do not rise to the level of a constitutional violation. *Adams v. Pate*, 445 F.2d 105, 108-09 (7th Cir. 1971).

Applying the standards above, the Court finds that plaintiff has not alleged a deprivation which has resulted in a denial of the minimal civilized measure of life's necessities. *See Flanory*, \_\_ F.3d at \_\_, 2010 WL 1791327, at *3 ("In the context of 'conditions of confinement' cases, the Eighth Amendment is concerned only with 'deprivations of essential food, medical care or sanitation' or 'other conditions intolerable for prison.'") (quoting *Rhodes*, 452 U.S. at 347).

First of all, plaintiff's main complaint appears to be that hot water was intermittently available or that the supply of hot water was inadequate to meet his shower needs. However, he does not assert that there was a complete absence of hot water throughout his short period of confinement or that the hot water situation prevented *him* from taking showers—albeit, he had to shower in cold water—or that it otherwise caused *him* any serious harm. At most, the lack of hot water was a temporary inconvenience and is not something which society is unwilling to tolerate. After all, society does tolerate this condition since, even in the free world, hot water interruptions occur—hot water heaters fail, pipes burst, and plumbers may not be readily known or

available.

Secondly, overcrowding, in and of itself, is not necessarily unconstitutional. *Johnson v. Heffron*, 88 F.3d 404, 407 (6th Cir. 1996) (citing, *inter alia*, *Rhodes*). If the overcrowding results in the denial of a basic human need, such as food, shelter, or warmth, that would be a constitutional wrong. *Wilson*, 501 U.S. at 298. No such a circumstance appears to exist here, where the allegation is that plaintiff had to sleep on the floor instead of an elevated bed because of the overcrowding. *See Mann v. Smith*, 796 F.2d 79, 85 (5th Cir. 1986) ( A prisoner has no right to sleep on an elevated bed. ).

Third, finding ants in the jail food is unquestionably a disgusting experience, but is not constitutionally repugnant. *Smith v. Younger*, 187 F.3d 638, 1999 WL 623355, *2 (6th Cir. Aug. 9, 1999) (The presence of a worm in peanut butter does not amount to an Eighth Amendment violation.). Excessive noise in a prison setting can state a constitutional claim, if it occurs every night and disrupts an inmate's sleep, *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996), but not if it occurs for a few hours, causing annoyance, but not causing injury. *Lunsford v. Bennett,* 17 F.3d 1574, 1580 (7th Cir.1994). Plaintiff's assertion that, one night, his sleep was interrupted, when the officers increased the volume on a television, does not transgress the Eighth Amendment.

Also, as indicated earlier, the length of the time an inmate is exposed to the

alleged unconstitutional condition is important. In this circuit, a prisoner's claim of a denial of clean linens, clean clothes, laundry detergent, and sanitary food for a brief period of time fails to state an Eighth Amendment violation. *See Walker v. State, Dept. of Corrections*, 2000 WL 32057, *1-*2 (6th Cir. Jan. 7, 2000). Likewise, allegations of overcrowded cells and denials of daily showers and out-of-cell exercise do not rise to constitutional magnitude, where a prisoner is subjected to the purportedly wrongful conditions for six days one year and ten days the next year. *Ziegler v. Michigan*, 50 Fed. Appx. 622, 624, 2003 WL 264735, *2 (6th Cir. Feb. 3, 2003); *see also Metcalf v. Veita*, 1998 WL 476254, *2 (6th Cir. Aug. 3, 1998) (finding that an eight-day denial of sufficient showers, cleaning, and laundry did not result in serious pain, offend contemporary standards of decency, or state an 8th Amendment claim). Housing plaintiff under the questioned conditions for seventeen days undoubtedly caused discomfort, even distress, but it did not deny plaintiff a basic necessity of life.

If, however, the claimed conditions rise to the level of an extreme deprivation, so as to satisfy the objective requirement of an Eighth Amendment claim, the Court sees nothing in the pleading to indicate that defendant sheriff knew about plaintiff's sleeping arrangement, the lack of hot water and clean clothing, or the interruption of his sleep. To satisfy the subjective component, a plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer a

substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk. *Farmer,* 511 U.S. at 837. Plaintiff " bears the onerous burden of proving the official's subjective knowledge...." *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir. 2001). Plaintiff's allegation that he sent grievances to defendant sheriff, which were never returned, concerning these and other matters, is insufficient to carry that heavy burden. Accordingly, plaintiff's assertions concerning the conditions of his confinement do not amount to an infringement of his Eighth Amendment rights.

### III. *Conclusion*

For all these reasons, plaintiff's complaint will be dismissed for failure to state a claim entitling him to relief under 42 U.S.C. § 1983.

A separate judgment will enter.

**SO ORDERED.**

**ENTER:**

/s/ Leon Jordan
LEON JORDAN
UNITED STATES DISTRICT JUDGE